IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| UNITED STATES OF AMERICA | : | CRIMINAL ACTION |
|---|---|---|
| v. | : | No. 10-199 |
| DONALD ANTHONY YOUNG | : | |

**MEMORANDUM**

**Juan R. Sánchez, J.**                                                                               May 5, 2011

Defendant Donald Anthony Young objects to the imposition of a two-level increase of his offense level for obstruction of justice pursuant to United States Sentencing Guidelines § 3C1.1. For the reasons set forth below, Young's objection to this portion of the Presentence Investigation Report (PSR) is overruled.

**FACTS**[1]

In January 2009, the SEC's Philadelphia Regional Office conducted an examination of the books and records of Acorn Capital Management LLC (Acorn), a registered investment adviser of which Young was the managing member. Acorn was the General Partner of, and the investment adviser to, Acorn II LP (Acorn II), another entity controlled by Young which invested in publicly traded securities.[2]

The SEC conducted the examination pursuant to its authority under Section 204 of the Investment Advisers Act of 1940, 15 U.S.C. § 80b-4. The purpose of such examinations is to ensure

---

[1] The following facts are based on the testimony of Frank Thomas, an Assistant Regional Director in the Philadelphia Regional Office of the U.S. Securities and Exchange Commission (SEC), who supervised the examination of Young's company, Acorn Capital Management LLC; the testimony of Special Agent Thomas J. Cortese; the PSR; and Young's responses to the SEC's requests for admission in the SEC's civil action against Young and his affiliated entities.

[2] To invest with Young's Acorn entities, investors purchased limited partnership interests in Acorn II.

registered investment advisers are following the federal securities laws, cash flows and transactions are appropriate, and investors are not being harmed.

On January 13, 2009, the SEC advised Young of the examination and requested in writing certain Acorn records. Pursuant to Section 204 of the Investment Advisers Act and Rule 204-2 thereunder, Acorn was required to maintain the requested records and to produce them for examination by the SEC. The SEC then conducted an on-site examination at Acorn's offices from January 21, 2009, to January 30, 2009.

Although Young provided the SEC with some of the information it requested during the course of the on-site examination, as of January 30, 2009, the SEC still had not received 35 of the items it had requested from Acorn. These documents included some of the materials most crucial to the SEC's ability to determine whether there was any type of impropriety at the fund, including: (1) custodial statements for Acorn II showing the amount of money in the partnership, (2) a list of Acorn II investors and the amounts of their investments, (3) quarterly performance reports sent to Acorn II limited partners, and (4) email communications sent to individual investors.

During February 2009, the SEC contacted Young and his counsel several times regarding the outstanding items. On February 11, 2011, Young's counsel advised SEC staff that Young said he had sent a box of documents earlier in the week. The SEC, however, did not receive the box. On February 20, 2009, Young agreed he would provide the outstanding items by February 24, 2009, but he did not do so. On February 25, 2009, Young emailed the SEC staff advising a package would be delivered that day, but no package was delivered. On February 27, 2009, the SEC received a package containing some of the outstanding documents; however, 22 of the 35 items were still incomplete or missing entirely as of that date. In particular, Young did not provide a list of investors

2

or the quarterly statements provided to Acorn II investors, and provided incomplete custodial statements.

On March 6, 2009, the SEC sent Young a letter notifying him he had failed to comply with the required submission of the outstanding items and stating Acorn's failure to produce records was impeding the examination. At that time, the SEC did not have the records it needed to verify that client assets were safe and that clients were being told the truth about their assets. The same day, SEC staff began contacting third parties to obtain information it had not received from Young.

On March 12, 2009, the SEC received information from Young which related to only seven of the 22 outstanding items and which still did not include a list of investors or the quarterly statements.[3] The SEC thus continued to seek information from third parties because such information was not being provided by Young. On the basis of information provided by third parties, including Acorn's accountants and introducing broker, the SEC determined Young had been misappropriating funds from Acorn II. The Government later determined that Young had continued to misappropriate investor funds after January 13, 2009, while the SEC examination was ongoing.

On April 17, 2009, the SEC filed a civil suit against Young, Acorn, and Acorn II alleging violations of the federal securities laws relating to Young's operation of a Ponzi scheme and seeking injunctive relief, disgorgement of ill-gotten gains, and civil penalties. This suit was delayed by Young's refusal to disclose information requested by the SEC during the examination.

On April 23, 2009, Young participated in an interview with representatives of the SEC and the U.S. Attorney's Office in which he confessed to having conducted a Ponzi scheme. During the interview, Young admitted he had been aware of the SEC examination of Acorn but deliberately had

---

[3] Young admitted in the related SEC civil action that he failed to provide his email files to the SEC.

not provided all of the documents the SEC had requested, including the quarterly statements sent to investors, because he knew disclosure of this information would expose his fraud.[4] Young has since cooperated fully with the U.S. Attorney's Office and with the receiver appointed in the SEC's civil action.

**DISCUSSION**

In calculating Young's offense level under the Sentencing Guidelines, the revised PSR includes a two-level upward adjustment for obstruction of justice pursuant to U.S.S.G. § 3C1.1 based on Young's failure to provide documents and information requested by the SEC in January 2009 and his admission to providing false and inaccurate items to the SEC.[5] Section 3C1.1 authorizes such a two-level increase

> [i]f (A) the defendant willfully obstructed or impeded, or attempted to obstruct or impede, the administration of justice with respect to the investigation, prosecution, or sentencing of the instant offense of conviction, and (B) the obstructive conduct related to (i) the defendant's offense of conviction and any relevant conduct; or (ii) a closely related offense.

The Government argues the adjustment is warranted because Young obstructed the SEC's investigation of Acorn by refusing to provide the SEC with records Acorn was required by law to produce, thereby delaying the SEC's detection of Young's fraud.[6] Young argues the adjustment is

---

[4] Young also admitted in his discovery responses in the SEC action that he failed to provide requested documentation to the SEC in order to hide his conversion of investor funds and to sustain his fraud.

[5] Although the initial draft of the PSR did not include an adjustment pursuant to § 3C1.1, the probation officer revised the PSR in response to the Government's objection to include the enhancement.

[6] The Government also argues the adjustment is warranted based on Young's submission of a Form ADV misstating the assets under management by Acorn as of December 31, 2008, and based on Young's admission in the SEC civil action that he provided the SEC with false and inaccurate

4

inapplicable because (1) the adjustment applies to obstructive conduct with respect to a civil proceeding only in cases involving perjury, which is not an issue here; (2) imposition of the adjustment would punish him for exercising his constitutional rights; (3) imposition of the adjustment would result in double-counting; and (4) the adjustment is inconsistent with the Government's stipulation in Young's plea agreement that he is entitled to a three-level reduction in offense level for acceptance of responsibility pursuant to U.S.S.G. § 3E1.1.

As the Commentary to § 3C1.1 recognizes, "[o]bstructive conduct can vary widely in nature, degree of planning, and seriousness," and the conduct to which the adjustment applies "is not subject to precise definition." § 3C1.1 cmt. n.3. The Application Notes include non-exhaustive lists of examples of the types of conduct to which the adjustment is—and is not—intended to apply, and direct that "comparison of the examples set forth in Application Notes 4 and 5 should assist the court in determining whether application of this adjustment is warranted in a particular case." *Id.*

Application Note 4 specifies the conduct to which the obstruction of justice adjustment applies includes "concealing . . . evidence that is material to an official investigation or judicial proceeding . . . or attempting to do so." *Id.* cmt. n.4(d). The conduct encompassed by this example includes failing to produce documents in response to a subpoena. *See United States v. Powell*, 576 F.3d 482, 498 (7th Cir. 2009) (holding a defendant concealed material evidence within the meaning of U.S.S.G. § 3C1.1 cmt. n.4(d) by failing "to comply with a grand jury subpoena requesting copies of tax returns and accounting schedules used to prepare the returns"); *United States v. Upton*, 91 F.3d

---

information. It is not clear, however, that the Form ADV, which was filed at the end of March 2009, had any effect on the SEC's investigation. It is also unclear whether the obstruction of justice enhancement would apply insofar as the false documents Young provided to the SEC were falsified as part of the offense of conviction before any investigation had begun. Therefore, the Court will address only Young's refusal to produce documents requested by the SEC during its investigation.

677, 688 (5th Cir. 1996) (upholding a § 3C1.1 enhancement based on the defendant's failure to produce all relevant documents ordered by a subpoena); *see also United States v. Thorson*, 633 F.3d 312, 321 (4th Cir. 2011) (noting refusal to comply with a grand jury subpoena "would amount to obstruction of justice"); *United States v. Ha*, 390 F. App'x 649, 651 (9th Cir. 2010) (same). While the SEC did not issue a subpoena in this case, as a registered investment adviser, Acorn was required by law to make its records available to the SEC. *See* 15 U.S.C. § 80b-4(a) ("All records . . . of such investment advisers are subject at any time, or from time to time, to such reasonable periodic, special, or other examinations by representatives of the Commission as the Commission deems necessary or appropriate in the public interest or for the protection of investors."). Young's failure to produce the requested items is therefore encompassed by § 3C1.1. *Cf. Thorson*, 633 F.3d at 321 (upholding a § 3C1.1 enhancement based on a defendant's production of fabricated documents both during an IRS audit and in response to a grand jury subpoena). Additionally, the documents withheld by Young were material to the SEC's examination within the meaning of Application Note 4(d), as Thomas, who supervised the examination, testified these documents were the most crucial documents for the SEC to obtain to determine whether Acorn was engaging in fraud. *See* § 3C1.1 cmt. n.6 (defining material information as "information that, if believed, would tend to influence or affect the issue under determination").

Although Young argues the obstruction of justice enhancement cannot apply because the Government concedes he did not obstruct the criminal proceedings, but obstructed only the SEC's investigation, the law is otherwise. By its terms, § 3C1.1 applies when a defendant's obstructive conduct occurs "with respect to the investigation . . . of the instant offense of conviction" and relates to "the defendant's offense of conviction and any relevant conduct" or "a closely related offense."

6

While the Third Circuit has not addressed the issue,[7] several other courts of appeals have held that "obstruction during a civil investigation of the *same conduct* that forms the basis of a conviction suffices for application of the enhancement." *United States v. Yip*, 592 F.3d 1035, 1042 (9th Cir. 2010) (holding "[o]bstruction during an IRS audit justifies enhancing a defendant's sentence for obstruction 'during the course of the investigation'"); *see also Thorson*, 633 F.3d at 321 (holding an IRS audit and a grand jury investigation "both constituted investigations of [the defendant's] offense" for purposes of § 3C1.1); *United States v. Fiore*, 381 F.3d 89, 94 (2d Cir. 2004) (holding a defendant's perjury in a prior SEC investigation of conduct for which the defendant was ultimately prosecuted occurred during the course of the investigation of the instant offense of conviction and noting "[w]here federal administrative and prosecutorial jurisdiction overlap, subsequent criminal investigations are often inseparable from prior civil investigations"); *United States v. McGovern*, 329 F.3d 247, 248 (1st Cir. 2003) (holding a defendant's obstruction during administrative Medicare and Medicaid audits which led to his criminal investigation and prosecution "had an adequate link to the ensuing criminal proceedings and so were during the course of the investigation of the offense of conviction"). As the Ninth Circuit recognized in addressing a defendant's obstruction of an IRS audit in *Yip*, such an audit

> is an official investigation that may be the first step leading to a criminal conviction for tax violations. The audit places a taxpayer on notice that the government is looking into the accuracy and propriety of his or her tax returns. . . . The IRS may

---

[7] In *United States v. Jenkins*, 275 F.3d 283, 289-90 (3d Cir. 2001), the Third Circuit held the obstruction of justice enhancement did not apply to a defendant who failed to appear in his state criminal case before his federal indictment was issued because his failure to appear had no effect on the federal investigation, noting § 3C1.1 requires a nexus between the defendant's obstructive conduct and the investigation, prosecution, or sentencing of the federal offense. The court did not address whether obstruction of a federal civil investigation of the conduct underlying the criminal offense constitutes obstruction with respect to the investigation of the offense of conviction.

7

> distinguish between the procedures to be followed during the civil and criminal phases of an audit, but to a taxpayer under suspicion, the latter merely represents an escalating development in the same underlying investigation.

592 F.3d at 1042 (citations omitted). This reasoning applies equally to investigations of securities violations, which also involve overlapping federal administrative and prosecutorial jurisdiction. *Fiore*, 381 F.3d at 94.

Indeed, even if the SEC examination in this case was not part of the investigation of Young's offense of conviction, the obstruction enhancement would still be warranted. Obstructive conduct occurring prior to the start of the investigation of the instant offense of conviction may qualify for the § 3C1.1 adjustment if such conduct "was purposefully calculated, and likely, to thwart the investigation or prosecution of the offense of conviction." § 3C1.1 cmt. n.1. Here, as noted, Young deliberately refused to produce documents to which the SEC was entitled in order to hide his conversion of investor funds, thereby delaying the SEC's detection of his fraud.

Young argues obstructive conduct in a civil proceeding can qualify for a § 3C1.1 enhancement only in cases involving perjury because perjury is the only type of obstructive conduct that Application Note 4 specifies may occur during a civil proceeding. *See* § 3C1.1 cmt. n.4(b) (stating conduct covered by § 3C1.1 includes "committing, suborning, or attempting to suborn perjury, including during the course of a civil proceeding if such perjury pertains to conduct that forms the basis of the offense of conviction"). Contrary to Young's assertion, however, courts have not limited the applicability of the § 3C1.1 enhancement to obstruction of a civil investigation by way of perjury. *See Thorson*, 633 F.3d at 321 (submission of fabricated document during IRS audit); *Yip*, 592 F.3d at 1041-42 (same); *McGovern*, 329 F.3d at 251 (submission of false documents to investigators conducting administrative audits).

Young also argues imposition of the enhancement would penalize him for exercising his constitutional rights by effectively requiring him to come forward and admit his guilt in order to avoid an obstruction enhancement. *See* § 3C1.1 cmt. n.2 (stating § 3C1.1 "is not intended to punish a defendant for the exercise of a constitutional right" and noting a defendant's denial of guilt or refusal to enter a guilty plea is not a basis for an obstruction of justice enhancement). However, the basis for the enhancement in this case is not Young's exercise of his constitutional rights but his refusal to produce documents and information to the SEC in connection with its examination of Acorn. Although Young was not obliged to admit his guilt, he had no constitutional right to withhold Acorn's business records from the SEC, even if such records were incriminating. *See In re Grand Jury Subpoena Issued June 18, 2009*, 593 F.3d 155, 158 (2d Cir. 2010) (holding a custodian of corporate records cannot refuse to produce corporate records on Fifth Amendment grounds, even where the corporation is a one-person operation); *United States v. Raniere*, 895 F. Supp. 699, 707 (D.N.J. 1995) (holding the president and sole shareholder of a closely held corporation could not assert a Fifth Amendment privilege with respect to the production of corporate documents). This argument is thus without merit.

Young further contends imposition of the adjustment would result in double-counting because his efforts to cover up his fraud are part of the crime and are also included in the enhancement for sophisticated means pursuant to U.S.S.G. § 2B1.1(b)(9)(C). The sophisticated means enhancement applies in cases involving "especially complex or especially intricate offense conduct pertaining to the execution or concealment of an offense." § 2B1.1(b)(9)(C) cmt. n.8(b). In the instant case, however, the obstruction and sophisticated means enhancements arise from separate actions by Young. Young's efforts to conceal his theft of investor funds through the

9

creation and dissemination of false documents to his investors, accountants, and broker-dealer were part of a sophisticated scheme to defraud, *see* PSR ¶ 9, but Young's refusal to provide the SEC with records in connection with its examination of Acorn's books and records was not. *See Thorson*, 633 F.3d at 321 (holding an enhancement for sophisticated concealment pursuant to U.S.S.G. § 2T1.4(b)(2) addressing the defendant's efforts to conceal wrongdoing during the course of his criminal activity was not duplicative of an obstruction of justice enhancement which was aimed at impeding an actual investigation).

Finally, Young argues the obstruction of justice adjustment is inconsistent with the Government's stipulation to a three-level reduction in offense level to reflect Young's timely acceptance of responsibility pursuant to § 3E1.1. The Commentary to § 3E1.1 provides that "[c]onduct resulting in an enhancement under § 3C1.1 . . . ordinarily indicates that the defendant has not accepted responsibility for his criminal conduct." § 3E1.1 cmt. n.4. While simultaneous imposition of an upward adjustment pursuant to § 3C1.1 and a downward adjustment pursuant to § 3E1.1 is therefore not typical, the Commentary recognizes that there may be extraordinary cases in which both adjustments apply. *Id.* Whether a particular case warrants both adjustments "requires consideration of the totality of the circumstances, including the nature of the defendant's obstructive conduct and the degree of the defendant's acceptance of responsibility." *United States v. Brown*, 80 F. App'x 794, 795 (3d Cir. 2003). Here, Young's obstructive conduct was confined to the SEC investigation, occurring during the months prior to the SEC's civil suit. Within a week after the SEC's complaint was filed, Young confessed to having conducted a Ponzi scheme and has since cooperated fully with the U.S. Attorney's Office and with the receiver. Although Young's post-

obstruction acceptance of responsibility does not erase his obstruction,[8] his acceptance of responsibility and cooperation have been significant.  As a result, this Court finds this is the kind of extraordinary case in which adjustments pursuant to both § 3C1.1 and § 3E1.1 are  warranted.

Accordingly, Young's objection to the imposition of a two-level increase for obstruction of justice pursuant to § 3C1.1 is overruled.  An appropriate Order follows.

BY THE COURT:


   /s/ Juan R. Sánchez
Juan R. Sánchez, J.

---

[8] *See United States v. Maccado*, 225 F.3d 766, 772 (D.C. Cir. 2000) (holding the fact that a defendant ultimately enters a guilty plea does not erase a prior obstruction of justice).